# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### EASTERN DIVISION

**JEFFERY WAYNE WANSLEY**                                        **PETITIONER**

**v.**                                              **CAUSE NO. 4:10-CV-149-CWR-FKB**

**MISSISSIPPI DEPARTMENT OF**                                **RESPONDENTS**
**CORRECTIONS; EMMITT L.**
**SPARKMAN**

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court are respondents' motion to dismiss, Docket No. 8, the Magistrate Judge's Report and Recommendation, Docket No. 29, and Jeffery Wayne Wansley's objection to that Report and Recommendation, Docket No. 31.[1] The Court appointed counsel for Wansley and held a hearing on November 2, 2012. Docket No. 43. Additional briefing was later submitted by the parties. Docket Nos. 52, 54-55. Having reviewed the facts, arguments, and applicable law, the Court is now ready to rule.

## I.      Factual and Procedural History

On December 8, 1999, Jeffery Wayne Wansley was convicted in the Circuit Court of Newton County, Mississippi, of selling $100 worth of cocaine within 1,500 feet of a church. *Wansley v. State*, 798 So. 2d 460, 461-62 (Miss. 2001); Docket No. 1, at 1. He was charged and convicted under two statutes. Docket No. 1, at 17 (Indictment), 19-20 (Judgment).

The first statute, Mississippi Code § 41-29-139(a)(1), makes it unlawful to sell cocaine, among other controlled substances. Wansley's violation of that statute carried a maximum 30-year term of imprisonment. *Id.* § 41-29-139(b)(1).

The second statute, Mississippi Code § 41-29-142(1), authorizes a defendant's sentence and fine to be doubled by the trial judge when a controlled substance is sold within 1,500 feet of a church, school, or other public facility. The relevant section reads as follows:

> Except as provided in subsection (f) of Section 41-29-139 or in subsection (2) of this section, **any person who violates** or conspires to violate **Section 41-29-139(a)(1)**, Mississippi Code of 1972, **by selling**, bartering, transferring, manufacturing,

---

[1] There is a discrepancy between the way Wansley has spelled his first name in documents filed with this Court and how it appears in earlier records. The Court applies the name found on the docket sheet.

distributing, dispensing or possessing with intent to sell, barter, transfer, manufacture, distribute or dispense, **a controlled substance**, in or on, or **within one thousand five hundred (1,500) feet of**, a building or outbuilding which is all or part of a public or private elementary, vocational or secondary school, or **any church**, public park, ballpark, public gymnasium, youth center or movie theater or within one thousand (1,000) feet of, the real property comprising such public or private elementary, vocational or secondary school, or any church, public park, ballpark, public gymnasium, youth center or movie theater **shall, upon conviction thereof, be punished by the term of imprisonment or a fine, or both, of that authorized by Section 41-29-139(b) and, *in the discretion of the court*, may be punished by a term of imprisonment or a fine, or both, of up to twice that authorized by Section 41-29-139(b)**.

*Id.* (emphasis added). When a defendant's punishment is increased pursuant to this statute, it is referred to as a "sentence enhancement."

The jury found that Wansley had sold cocaine within 1,500 feet of a church. Docket No. 1, at 19-20 (Judgment). Accordingly, the second statute required Wansley to be punished in accordance with § 41-29-139(b), and then, "in the discretion of the court," permitted the trial judge to double that punishment. The trial judge sentenced Wansley to 30 years of imprisonment, the maximum term authorized under § 41-29-139(b). *Id.* No further sentence or fine was assessed.

Wansley's conviction and sentence were affirmed on direct appeal by the Mississippi Supreme Court. *Wansley*, 798 So. 2d at 465. His state habeas petitions were denied. *See* Docket No. 11, at 4 (collecting petitions). A federal habeas petition also was denied. *Wansley v. Sparkman*, No. 4:02-cv-150, Docket No. 18 (S.D. Miss. Nov. 7, 2003).

During his federal habeas proceeding, Wansley argued, *inter alia*, that the second statute's authorization of sentence enhancements for selling drugs near churches violated the Establishment Clause of the United States Constitution. The Mississippi Attorney General's Office responded to this argument as follows:

Miss. Code Ann. § 41-29-139(b) provides that upon conviction for the sale of cocaine, a person may be sentenced to not more than thirty (30) years. Mississippi law also provides that a sentence for the sale of cocaine may be enhanced under four enhancement statutes, one of which is § 41-29-142. Section 41-29-142 provides for discretionary sentencing of up to twice that authorized for sale of controlled substances within certain distances of schools, **churches** and other public buildings and locations. The law only gives judges discretion as to whether to apply the enhancement statute – lower court judges are not mandated to double the punishment

under § 41-29-142. Furthermore, as a general rule, a sentence that does not exceed the maximum period allowed by statute will not be disturbed on appeal. **Most importantly, however, the enhancement provision of § 41-29-142 was not applied here.** Although indicted under both § 41-29-139(b) and § 41-29-142, Wansley was sentenced to only thirty (30) years – the maximum allowed under § 41-29-139(b). The sentence was not doubled to sixty (60) years as provided for by § 41-29-142. Accordingly, because the enhancement provision was not applied here, Wansley's claim has no merit.

Answer and Affirmative Defenses, in *Wansley v. Sparkman*, No. 4:02-cv-150, Docket No. 4, at 22-23 (S.D. Miss. July 12, 2002) (quotation marks, citations, and brackets omitted). The pleading was signed by Special Assistant Attorney General Jo Anne M. McLeod. *Id.* at 26. Special Assistant Attorney General Jerrolyn M. Owens was listed on the document as co-counsel.[2] *Id.*

The United States Magistrate Judge assigned to the case denied all of Wansley's claims for relief. *See* Report and Recommendation, in *Wansley v. Sparkman*, No. 4:02-cv-150, Docket No. 16, at 12-13 (S.D. Miss. Oct. 15, 2003). The District Judge agreed and adopted the Magistrate Judge's Report and Recommendation in full. *See* Order, in *Wansley v. Sparkman*, No. 4:02-cv-150, Docket No. 18 (S.D. Miss. Nov. 7, 2003). Several years passed.

A document attached to the present habeas petition shows that as of April 28, 2009, the Mississippi Department of Corrections (MDOC) calculated Wansley's sentence as one without any sentence enhancement. Docket No. 1, at 21. The record, a time sheet printed on May 22, 2009, showed a "Parole Date" of April 7, 2008. *Id.* A later time sheet, computed on July 10, 2009, and printed on July 14, 2009, showed the same thing. *Id.* at 22.

The time sheets likely computed a parole date because Mississippi law generally allows non-violent offenders with 30-year sentences to be eligible for parole after service of at least 10 years' time. *See* Miss. Code § 47-7-3(1). Wansley was approaching 10 years' time and was eligible or soon eligible for parole. If an inmate is parole-eligible, the decision of whether or not to grant parole belongs to the Mississippi Parole Board. *See Moore v. Ruth*, 556 So. 2d 1059, 1061 (Miss. 1990) ("the Parole Board ha[s] broad discretionary authority regarding grants of parole").

---

[2] While the particular person who signs a pleading is ordinarily of little consequence, present counsel has attempted to lay the blame for the State's 2002 arguments at the feet of her former co-counsel. *See* Part IV.A.1, *infra*. What present counsel overlooks, however, is that the position espoused in the earlier pleadings is the position of the *State*, not the position of *counsel*.

Approximately two weeks later, however, on July 29, 2009, MDOC recalculated and reprinted Wansley's time sheet. Docket No. 1, at 23. The new calculation showed that Wansley had been sentenced to an "Enhanced Penalty." *Id.* No parole date was shown on this new document, probably because Mississippi law does not permit inmates convicted of "felonies with enhanced penalties" to be paroled. Miss. Code § 47-7-3(1)(h). As a result of MDOC's recalculation, Wansley was no longer deemed eligible for the parole vote he once thought was forthcoming.

On September 23, 2009, Wansley filed a grievance with MDOC's Administrative Remedy Program (ARP) explaining his sentence and alleging that the enhancement first appeared after he applied for parole.[3] Docket No. 8-3, at 1. MDOC denied the request in November 2009. *Id.* at 6. Wansley's petition for relief recited that when that was denied, he filed a second step grievance, which received no response, and then a third step, which apparently also received no response. Docket No. 1, at 7. MDOC denies receiving either of those steps. Docket No. 8, at 5.

Also in November 2009, Wansley filed a motion for clarification in the Mississippi Supreme Court. Docket No. 8-4, at 1. He again described the parole-eligibility problem and asked for either the court or the Attorney General's office "to clarify this sentence discrepancy." *Id.* at 2. His motion was denied as "not well taken" on December 30, 2009. Docket No. 8-5. No explanation was given.

Wansley also moved for clarification from the court that sentenced him: the Circuit Court of Newton County.[4] Docket No. 1, at 7. The Circuit Judge denied his request, finding that Wansley was required to obtain leave from the Mississippi Supreme Court before filing such a motion. Docket No. 8-6, at 1. That order was dated June 17, 2010.

In September 2010, Wansley filed the present petition for habeas relief. Docket No. 1. He claimed that MDOC had erroneously denied him the right to seek parole.[5] *Id.* at 4. He sought parole or eligibility for parole, as well as damages for his allegedly extended incarceration. *Id.* at 4-5, 13-15.

---

[3] Wansley's motion to the Mississippi Supreme Court stated that he applied for parole on May 31, 2009. Docket No. 8-4, at 2.

[4] Wansley had apparently seen another inmate utilize this procedure with success. *See Collins v. State*, No. 2009-293-CV-L (Grenada Cir. Ct. Oct. 12, 2009), *available at* Docket No. 1, at 25-27.

[5] MDOC's inmate locator website shows a tentative release date for Wansley of August 17, 2023.

After a number of filings and motions,[6] the Magistrate Judge entered a Report and Recommendation proposing to grant the State's motion to dismiss. Docket No. 29. The matter came before the undersigned on Wansley's objection to that Report and Recommendation. Docket No. 31. The Court appointed counsel, held a hearing, and took post-hearing briefing.

## II.     Legal Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a state prisoner is not entitled to federal habeas relief unless the state court's adjudication of the prisoner's claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

"A state court's decision involves an unreasonable application of clearly established federal law if the state court correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Fields v. Thaler*, 588 F.3d 270, 273 (5th Cir. 2009) (quotation marks and citation omitted). "To be clear, a federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be *unreasonable*." *Roberts v. Thaler*, 681 F.3d 597, 604 (5th Cir. 2012) (quotation marks and citations omitted); *see also Hodges v. Epps*, 648 F.3d 283, 286 (5th Cir. 2011) ("A state court's decision constitutes an unreasonable application of clearly established federal law if it is 'objectively unreasonable.'").

## III.    Mississippi Code § 41-29-142(1)

Before proceeding to consider the parties' various arguments, it is worth discussing how the statute at the heart of this case operates. Fortunately, Mississippi's appellate courts have regularly interpreted § 41-29-142(1).

---

[6] Wansley has occasionally advanced other theories of relief, such as a rehashing of his challenges to the sufficiency of the evidence, the constitutionality of § 41-29-142(1), and actual innocence. These claims are either procedurally barred as a successive petition or lack merit. They will not be considered further.

We begin with the case of Melissa Davis. In 1997, Davis was convicted in state court of selling $40 worth of cocaine approximately 700 feet from a church. *Davis v. State*, 724 So. 2d 342, 343 (Miss. 1998). Had her sole crime been the sale of that amount of cocaine, she would have faced a maximum 30-year prison term. *Id.* Because of the proximity to the church, however, her sentence was eligible to be doubled to 60 years. The trial judge exercised that discretion and sentenced Davis to 60 years in prison. *Id.*

On appeal, her conviction was affirmed. *Id.* at 343-44. When Davis challenged her sentence, the Mississippi Supreme Court described the operation of § 41-29-142(1) in this way:

> Davis urges that, even if guilty as charged, she was subjected to a sentence which was so excessive given the nature and details of her crime, as to be cruel and inhuman and disproportionate when viewed against similar sentences given for like offenses. Her crime on October 3, 1996, the only one for which she was convicted and sentenced in this proceeding, was the sale of two rocks of crack cocaine, two-tenths of a gram (.0071 ounces), for forty dollars. For this **she received the maximum sentence** which she could receive under Miss. Code Ann. § 41-29-139(b)(1) (1993), **which was enhanced, indeed doubled,** under Miss. Code Ann. § 41-29-142(1) because the sale took place a little over 700 feet from a church building. By the application of the maximum sentence allowed under both statutes, neither of which carry a mandatory sentence, Davis's penalty for the offense is sixty years in prison.

*Id.* at 344 (emphasis added).

The state's highest court, "concerned about the severity of the sentence in this case in the absence of anything appearing in the record which reflects egregious circumstances," remanded Davis's case for resentencing.[7] *Id.*; *see also White v. State*, 742 So. 2d 1126, 1135-38 (Miss. 1999) (60-year sentence for selling cocaine within 1,500 feet of a church remanded for resentencing); *Taylor v. State*, 741 So. 2d 960, 962, 964 (Miss. Ct. App. 1999) (affirming 60-year sentence for selling cocaine within 1,500 feet of a school as "statutorily authorized").[8]

The decision in *Davis*, like the plain language of the statute, shows that a defendant convicted under § 41-29-142(1) need not be sentenced to the full 60-year term authorized by statute,

---

[7] Davis was ultimately resentenced to monetary fines and 30 years imprisonment, to serve 12 years with the remaining 18 suspended for post-release supervision. *See* Order, *Davis v. State*, No. 2000-517CIV / 15,105CR (Copiah Cir. Ct. Apr. 6, 2001).

[8] *Taylor* was handed down on June 22, 1999. *White* was handed down two days later.

nor must she be sentenced even to the 30-year maximum for drug crimes committed nowhere near a church or school. The enhancement provision is discretionary, not mandatory. *See* Miss. Code § 41-29-142(1) (stating that additional imprisonment or fine is "in the discretion of the court"). That conclusion is consistent with the State's argument in Wansley's earlier habeas proceeding that "[t]he law only gives judges discretion as to whether to apply the enhancement statute – lower court judges are not mandated to double the punishment under § 41-29-142." *See* Answer and Affirmative Defenses, *supra*.[9]

The discretionary nature of this sentencing enhancement is well-established in the case law. Perhaps the most obvious declaration is the Mississippi Supreme Court's finding in Wansley's direct appeal that § 41-29-142(1) "grants the trial court the **discretion** of doubling the punishment of an individual found guilty of violating" §§ 41-29-139(a)(1) and 41-29-142(1). *Wansley*, 798 So. 2d at 464 (emphasis added). That is not the only example, though. *See Brown v. State*, 995 So. 2d 698, 703 (Miss. 2008) ("The statute under which Brown was sentenced **permits** trial courts to levy sentences of up to two times the normally prescribed penalty. Miss. Code Ann. § 41-29-142 (Rev. 2005).") (emphasis added); *White*, 742 So. 2d at 1135 (holding that the statute "provid[es] for **discretionary** sentencing of up to twice that authorized for sale of controlled substances within certain distances of schools, churches and other public buildings and locations") (emphasis added); *Perkins v. State*, 37 So. 3d 656, 664 (Miss. Ct. App. 2009) ("I find that . . . section 41-29-142 authorized the circuit court **with discretion** to double the maximum punishment provided by section 41-29-139(b)") (Roberts, J., specially concurring) (emphasis added); *Sanchez v. State*, 2 So. 3d 780, 782 (Miss. Ct. App. 2009) ("Further, Mississippi Code Annotated section 41-29-142(1) (Rev. 2005) provides that a person who violates section 41-29-139(a)(1) within fifteen hundred feet of a church

---

[9] Not all of Mississippi's sentence enhancement statutes are discretionary. One statute states that habitual felons in certain circumstances "*shall* be sentenced to the maximum term of imprisonment prescribed for such felony, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation." Miss. Code § 99-19-81 (emphasis added). The Mississippi legislature obviously understands the difference between the words "shall" and "may," and uses them in different places to achieve different levels of discretion in sentencing.

Notwithstanding § 99-19-81, the Mississippi Supreme Court has also explained that trial courts have the "authority to review a particular [mandatory] sentence in light of constitutional principles of proportionality as expressed in *Solem v. Helm*," 463 U.S. 277 (1983). *Clowers v. State*, 522 So. 2d 762, 763-65 (Miss. 1988) (affirming trial court's refusal to impose mandatory sentence where mandatory sentence would be disproportionate to the crime, and rejecting State's argument that once it proved defendant's habitual offender status, trial court lacked discretion to sentence defendant to something less than the mandatory sentence).

**may** be sentenced to a term of imprisonment up to twice what is otherwise authorized by section 41-29-139(b).") (emphasis added); *Wolverton v. State*, 859 So. 2d 1073, 1077 (Miss. Ct. App. 2003) ("If the sale takes place within 1500 feet of a ball park, then the court, **in its discretion**, has the authority to double the sentence allowed under § 41-29-139(b). Miss. Code Ann. § 41-29-142(1) (Rev. 2001).") (emphasis added); *Green v. State*, 762 So. 2d 810, 813 (Miss. Ct. App. 2000) (reciting that "Mississippi law provides several instances where a sentence for the sale of cocaine **may** be enhanced," and describing § 41-29-142 as "providing for **discretionary** sentencing") (emphasis added); *Taylor*, 741 So. 2d at 962 ("section 41-29-142 of the Mississippi Code . . . **permits** the trial court to give an enhanced sentence") (emphasis added).[10]

Two other foundational issues warrant exploration. One is what "enhance" means. That matters because Mississippi law states that felons with "enhanced penalties" are ineligible for parole. Miss. Code § 47-7-3(1)(h).

"It is long settled that words in statutes should be given their ordinary, popular meaning unless [the legislature] clearly meant the words in some more technical sense." *United States v. Nat'l Broiler Mktg. Ass'n*, 550 F.2d 1380, 1386 (5th Cir. 1977) (citations omitted). "[W]e cannot take a poll to determine the ordinary, popular meaning" of a word, "[a]nd our confidence in the dictionary for this purpose is not great." *Id.* Rather, "when a popular or common word is used in a statute, but is not defined, the word should be given its common meaning." Singer & Singer, 2A Statutes and Statutory Construction § 47:28 (7th ed. 2009) [*hereinafter* Sutherland on Statutory Construction].

"The ordinary-meaning rule is the most fundamental semantic rule of interpretation." Scalia & Garner, Reading Law: The Interpretation of Legal Texts 69 (2012). The rule has been adopted by the Mississippi Supreme Court and the Mississippi Attorney General's Office, as well as passed into

---

[10] This discretion is not surprising; Mississippi law has long vested its trial judges with substantial leeway. At sentencing, Mississippi's judges are provided "enough room to exercise their own sound judgment in the cases coming before them" and "do what a judge is supposed to do–make sound judgments on the issues before the court within the boundaries of the laws of this State, the Mississippi Constitution and the United States Constitution." *White*, 742 So. 2d at 1136. "The Legislature wisely provided such a broad range of sentences to allow trial judges, using their discretion, to issue appropriate sentences in each individual case." *Id.* at 1137; *see also Davis*, 724 So. 2d at 344 ("our circuit judges, present throughout criminal trials and observing in detail the testimony and evidence, are uniquely suited to apply a range of sentences to specific offenses"). In *White*, moreover, the Mississippi Supreme Court admonished trial courts to use wisely their discretion in imposing appropriate sentences, or risk losing this "freedom through the adoption of sentencing guidelines as was done in the federal system." 742 So. 2d at 1138. "We are duty bound to insure this *broad discretionary* authority is properly put to use." *Id*. at 1137 (emphasis added).

law by the Mississippi legislature. *See Roberts v. Mississippi Republican Party State Exec. Comm.*, 465 So. 2d 1050, 1052 (Miss. 1985) ("Words in common use when used in a statute should be given their usual and ordinary meaning."); Miss. Att'y Gen. Op. No. 2012-209, 2012 WL 3060433, at *3 (June 29, 2012) ("All words and phrases set forth in Mississippi statutes are used according to their common and ordinary meaning.") (citing Miss. Code § 1-3-65); Miss. Code § 1-3-65 ("All words and phrases contained in the statutes are used according to their common and ordinary acceptation and meaning; but technical words and phrases according to their technical meaning.").

The ordinary meaning of enhance is to increase or improve. When the word modifies a tangible, countable thing like a prison term or the monetary value of property, enhance means increase. A sentencing enhancement increases an inmate's time in prison. In contrast, to give a more mundane example, a consumer product that is enhanced is said to be improved. Enhanced dish detergent may be a more effective cleaner or use less detergent than its prior version.

While "[m]any words have more than one ordinary meaning," the ordinary-meaning rule presumes "that a thoroughly fluent reader can reliably tell in the vast majority of instances from contextual and idiomatic clues which of several possible senses a word or phrase bears." Scalia & Garner at 70. As the Sutherland treatise puts it, where a "word of common usage has more than one meaning, the one which will best attain the purpose of the legislature should be adopted in construing the statute." Sutherland on Statutory Construction § 47:28.

Only one of the two common meanings of enhance fits our context. In the sentencing realm, enhance can only mean to increase. That is because a sentencing enhancement increases the term of months or years the inmate is incarcerated. It does not *improve* that sentence.

It also is necessary to consider what the word enhance modifies in this situation. It is not correct to say that an *offender* is enhanced, because it is difficult to see how a criminal conviction extends or improves an inmate. Nor is it accurate to say that a *conviction* is enhanced by a trial judge. The act already occurred and cannot be increased, and the jury has already rendered its verdict on the charged crimes. The conviction is what it is before the sentencing phase. Rather, the word enhance modifies the *punishment*. It increases or extends the sentence imposed upon the convict.

This is the most natural reading of our statute, as a number of cases make clear. *See White*, 742 So. 2d at 1135 ("Mississippi law provides **a sentence** for sale of cocaine **may be enhanced**

under one of four enhancement statutes") (emphasis added); *Davis*, 724 So. 2d at 344 ("For this she received **the maximum sentence** . . . **which was enhanced**, indeed doubled, under Miss. Code Ann. § 41-29-142(1)") (emphasis added); *id.* at 347-48 (Mills, J., dissenting) ("**The sentence was enhanced** because the sale took place near a church building.") (emphasis added); *Williams v. State*, 794 So. 2d 181, 186 (Miss. 2001) ("The State charges that the indictment notified Williams that it was seeking **an enhanced sentence** because the crime–selling and transferring cocaine–occurred within 1,500 feet of a school.") (emphasis added); *id.* at 188 ("Section 41-29-142 indicates that there are two alternative requirements in order for a **sentence to be enhanced**.") (emphasis added); *Pearson v. State*, 64 So. 3d 569, 572 (Miss. Ct. App. 2011) (describing § 41-29-142 as a "**sentencing-enhancement** factor") (emphasis added); *Perkins*, 37 So. 3d at 664 ("I find that . . . section 41-29-142 authorized the circuit court with discretion **to double the maximum punishment** provided by section 41-29-139(b)") (Roberts, J., specially concurring) (emphasis added); *Tarver v. State*, 15 So. 3d 446, 451-52 (Miss. Ct. App. 2009) ("In addition, **the sentence was enhanced** pursuant to Mississippi Code Annotated section 41-29-142 (Rev. 2005)") (emphasis added); *Wolverton*, 859 So. 2d at 1077 ("If the sale takes place within 1500 feet of a ball park, then the court, in its discretion, has the authority to **double the sentence** allowed under § 41-29-139(b). Miss. Code Ann. § 41-29-142(1) (Rev. 2001).") (emphasis added); *Taylor*, 741 So. 2d at 962 ("section 41-29-142 of the Mississippi Code . . . permits the trial court to give an **enhanced sentence**") (emphasis added); *see also* Renee C. Harrison, *Do the Crime, Do the Time, But the Time Should Fit the Crime: Does Mississippi Need Sentencing Guidelines?*, 21 Miss. C. L. Rev. 121, 143 (2001) ("if a defendant sells this controlled substance within 1500 feet of a church or school, he is subject to, at the discretion of the trial judge, an **enhancement of his sentence** of up to double the time") (emphasis added).

This case law also indicates that our sentencing enhancement statute can be rendered moot by the trial judge's exercise of discretion. In *Pearson*, for example, defendant Raco Pearson was charged with violating Mississippi Code § 41-29-139, and his indictment also listed § 41-29-142. *Pearson*, 64 So. 3d at 577. The indictment therefore "provided him notice of the applicable sentencing enhancement for park proximity." *Id.* at 577. At trial in the Circuit Court of Clarke County, the State proved that Pearson sold cocaine "at a location referred to as Summerall Park."

*Id.* at 572. He was sentenced to "fifteen years' imprisonment, with five years suspended and five years of supervised probation, and . . . pay[ment of] a $5,000 fine upon his release." *Id.*

On appeal, the Mississippi Court of Appeals refused to disturb the jury's finding that the defendant had sold cocaine. *Id.* at 575. In considering the defendant's argument that the conviction had to be reversed because the State did not prove that the sale occurred within 1,500 feet of a public park, the court held as follows:

> We agree with Pearson that the State failed to prove the sale occurred within 1,500 feet of a public park. Although the informant testified the sale occurred on the real property referred to as Summerall Park, the record contains no evidence establishing this property was in fact a public park. While this failure by the State precludes an enhanced sentence, it does not alter Pearson's sale-of-cocaine conviction. **And in this particular case it has no effect on his sentence because the trial judge did not use park proximity to increase Pearson's penalty beyond the statutory maximum.**
>
> **The statutory authority to double the penalty for sale of a controlled substance is discretionary.** Section 41-29-139(b)(1) imposes a maximum sentence of thirty years' imprisonment in cases involving Schedule II substances such as cocaine. Section 41-29-142(1) provides a person who violates section 41-29-139(a) by selling cocaine within 1,500 feet of the property of a public park, "*in the discretion of the court, may* be punished by a term of imprisonment or a fine, or both, of up to twice that authorized by Section 41-29-139(b)." Miss. Code Ann. § 41-29-142(1) (emphasis added). **Far from deciding to penalize Pearson double the thirty-year maximum, the trial judge, in his discretion, sentenced Pearson to fifteen years' imprisonment**, with five of those years suspended, followed by five years of supervised probation. The apparent determining sentencing factor was not the location of the sale but rather Pearson's forty-two prior misdemeanor convictions. Pearson's sentence was well below the general statutory maximum of thirty years listed in section 41-29-139(b)(1).

*Id.* at 577 (footnote omitted and bolding added). Finding "nothing to vacate" because Pearson's sentence was "not greater than thirty years," the Court modified "the conviction from 'sale of cocaine within 1,500 feet of a public park' to 'sale of cocaine' and affirm[ed] as modified." *Id.* In other words, the enhancement provision of § 41-29-142(1) was effectively rendered moot by the trial judge's issuance of a sentence not greater than 30 years.

The Mississippi Court of Appeals' decision meant that Pearson's sentence was not an "enhanced penalty," which therefore meant Pearson was eligible for parole. MDOC's inmate locator

website, in fact, shows that Pearson is currently not incarcerated. And the Mississippi Parole Board's "Parolee Search" website reveals that a Raco Pearson with a conviction for sale of cocaine is presently under supervision in Clarke County.

## IV.  Discussion

With the framework of § 41-29-142(1) now more fully developed, it is appropriate to take up respondents' specific arguments for why Wansley is ineligible for parole.

### A.  Arguments Concerning the Statute

Respondents' primary contention on the merits is that all persons convicted under § 41-29-142(1) are "enhanced offenders" that are ineligible for parole as a matter of law.[11] At the hearing, they stated that the basis for this conclusion was a memorandum or perhaps an email, a copy of which has not been provided to the Court or the petitioner, by either a Special Assistant Attorney General or one of MDOC's own attorneys, that interpreted § 41-29-142(1) as automatically "enhancing" the sentence of every defendant convicted under that statute.[12] Respondents further asserted that the length of the inmate's sentence was irrelevant; a 1-year sentence would be just as "enhanced" as a 60-year sentence. Thus, because Wansley was convicted under § 41-29-142(1), he was automatically ineligible for parole.

### 1.  The 2002 pleading

Respondents' current argument is directly contradictory to their 2002 pleading. Then, the State contended that § 41-29-142(1) was "discretionary" and irrelevant to Wansley because "the enhancement provision was not applied." *See* Answer and Affirmative Defenses, *supra*. Now, it contends that the statute automatically enhances the offender, including Wansley. Both of these claims cannot be correct.

---

[11] Respondents' brief refers to Wansley as an "enhanced offender" 18 times. The term is misleading because enhance does not modify *offender*. The question is whether Wansley was given an enhanced *sentence*.

[12] MDOC has also used this reasoning to deny parole eligibility to an inmate convicted under one of Mississippi's weapons-related sentence enhancement statutes, Miss. Code § 41-29-152, even though that statute provides that enhancements are discretionary, and it is not clear that the inmate's sentence was enhanced by the trial judge. *Jenkins v. Crockett*, No. 4:10-cv-35, 2011 WL 6965472, at *1 (S.D. Miss. Oct. 27, 2011) (describing Jenkins' allegations that MDOC "incorrectly applied a sentence enhancement, causing him to lose privileges and causing him to be denied parole" and that "MDOC did not apply an enhanced penalty to his sentence until a parole audit in May, 2009"), *report and recommendation adopted*, 2012 WL 38763 (S.D. Miss. Jan. 9, 2012). According to MDOC's website, Jenkins remains incarcerated and is expected to be released in October 2017.

Present counsel for respondents, Special Assistant Attorney General Owens, blamed the contradiction on the author of the 2002 filing. But Ms. Owens' name was also listed on the 2002 document as one of two attorneys on the brief.[13] And shifting the responsibility to co-counsel misses the point: the position espoused in the earlier pleadings is the position of the *State*, not the position of *counsel*.

We return to ask why the State's 2002 pleading is exactly opposite to its arguments in this case. The circumstances suggest that the State should be judicially estopped from changing its position. In a relatively recent en banc opinion, the Fifth Circuit described the purpose, application, and elements of judicial estoppel in this way:

> "The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." 18 James Wm. Moore et al., *Moore's Federal Practice* § 134.30 at 63 (3d ed. 2011) (hereinafter "Moore's"). It is "an equitable doctrine invoked by a court at its discretion" to "protect the integrity of the judicial process." *New Hampshire v. Maine*, 532 U.S. 742, 749-50, 121 S. Ct. 1808, 149 L. Ed.2d 968 (2001) (internal quotation marks and citations omitted). While enumerating several factors that typically inform the decision whether to apply the doctrine in a particular case, the Supreme Court has refused to "establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel," stating instead that different considerations "may inform the doctrine's application in specific factual contexts." *Id.* at 751, 121 S. Ct. 1808; *see also* 18 Moore's § 134.31 at 73 ("Because the doctrine is equitable in nature, it should be applied flexibly, with an intent to

---

[13] When the undersigned mentioned at the hearing that Ms. Owens was co-counsel on the 2002 pleading, she responded that attorneys in the Attorney General's Office put each other's names on "every brief" as a matter of course, in case backup counsel is needed to step in. A review of the docket sheets in Ms. Owens' other cases suggests that the office does not follow that routine often. In all 25 of her cases pending in this judicial district, for example, Ms. Owens is the only attorney representing the State of Mississippi. *See Young v. King*, No. 1:10-cv-234; *Becker v. King*, No. 1:11-cv-6; *Guadiana v. King*, No. 1:12-cv-395; *Nelson v. Streeter*, No. 1:13-cv-18; *Johnson v. Brewer*, No. 1:13-cv-39; *Walker v. Caskey*, No. 2:10-cv-176; *Slade v. Bingham*, No. 2:11-cv-99; *Jones v. King*, No. 2:11-cv-169; *Brown v. King*, No. 2:11-cv-252; *Gore v. Epps*, No. 2:12-cv-69; *Walker v. Holman*, No. 2:12-cv-92; *Holder v. Byrd*, No. 2:12-cv-148; *Rhodes v. Streeter*, No. 2:13-cv-14; *Gunn v. Sparkman*, No. 2:13-cv-34; *Shorter v. Epps*, No. 3:11-cv-225; *Harness v. Epps*, No. 3:12-cv-25; *Allen v. Shaw*, No. 3:12-cv-764; *Patterson v. Matthew*, No. 3:12-cv-815; *Walley v. Epps*, No. 4:10-cv-71; *Timmons v. Epps*, No. 4:11-cv-209; *Vaden v. Outlaw*, No. 4:12-cv-192; *Dixon v. King*, No. 4:13-cv-15; *Thompson v. King*, No. 4:13-cv-50; *Williams v. Epps*, No. 4:13-cv-51. (While the Attorney General is also listed as counsel on many of these matters, he is not actually litigating these cases, of course, nor has present counsel suggested that General Hood is the backup attorney on her cases.) Recent decisions confirm that present counsel is regularly listed as the sole attorney for the State. *See, e.g., Johnson v. Mississippi*, No. 2:12-cv-95, 2013 WL 749726 (S.D. Miss. Feb. 27, 2013) (showing as sole defense counsel "Jerrolyn M. Owens, Office of the Attorney General, Jackson, MS, for State of Mississippi"); *Thompson v. Holman*, No. 4:09-cv-135, 2013 WL 425859 (S.D. Miss. Feb. 4, 2013) (same); *Hughes v. Epps*, No. 1:09-cv-284, 2013 WL 1291624 (N.D. Miss. Mar. 27, 2013) (same).

achieve substantial justice. . . . Application of the doctrine of judicial estoppel should be guided by a sense of fairness, with the facts of the particular dispute in mind."); 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4477 at 553 (2d ed. 2002) ("The concern [of judicial estoppel] is to avoid unfair results and unseemliness."). . . .

> In assessing whether judicial estoppel should apply, we look to see whether the following elements are present:
> (1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position;
> (2) a court accepted the prior position; and
> (3) the party did not act inadvertently. . . .

> Because judicial estoppel is an equitable doctrine, courts may apply it flexibly to achieve substantial justice. *See New Hampshire*, 532 U.S. at 750, 121 S. Ct. 1808; 18 Moore's § 134.31 at 73.

*Reed v. City of Arlington*, 650 F.3d 571, 573-74, 576 (5th Cir. 2011) (en banc). Judicial estoppel is applied "particularly in situations where intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice." *In re Oparaji*, 698 F.3d 231, 235 (5th Cir. 2012) (quotation marks and citation omitted).

The Fifth Circuit has "previously emphasized that judicial estoppel is intended to protect the judicial system *rather than the litigants*." *Id.* (quotation marks, citation, and brackets omitted). Mississippi courts are in agreement. *See Copiah Cnty. v. Oliver*, 51 So. 3d 205, 207 (Miss. 2011) (citing *Kirk v. Pope*, 973 So. 2d 981, 991 (Miss. 2007)).

Here, the first element of judicial estoppel is satisfied. In 2002, the State argued to this Court that a sentence enhancement under § 41-29-142(1) is *discretionary* as a matter of law and *was not applied* to Wansley as a matter of fact. Today, the State tells this Court that a sentence enhancement under § 41-29-142(1) is *automatic* and is *presently being applied* to deny Wansley parole eligibility. These positions are plainly inconsistent.

On the third element, it is difficult to see how the State's prior argument could have been inadvertent. In 2002, it could have argued that the Establishment Clause was not violated by § 41-29-142(1) and stopped there. But it went further, adding a paragraph about how a constitutional challenge to the statute was moot because the sentence enhancement was discretionary and had not been applied in this case. This paragraph was described by the State as its "**most important[]**"

argument, and was bolded where nothing on the merits of the Establishment Clause had been emphasized. Nothing about the State's 2002 argument seems inadvertent.

Judicial estoppel in this case therefore turns on the second element: whether this Court accepted the prior position. The situation presents somewhat of a conflict between the underlying rationale behind judicial estoppel and its elements. The Fifth Circuit has endorsed the idea, as articulated in leading treatises, that "judicial estoppel should be guided by a sense of fairness," and that "[t]he concern [of judicial estoppel] is to avoid unfair results and unseemliness." *Reed*, 650 F.3d at 574 (quotation marks and citations omitted).[14] It also, however, requires the prior Court to have accepted the party's earlier argument. *Id.* at 574.

It is not fair for the State to completely reverse course when the parties are the same, the underlying facts are the same, the state statute is the same, and the case law is the same. It is unseemly for the State to change its position without an intervening change in fact or law because it suggests that the State has "deliberately chang[ed] positions according to the exigencies of the moment." *Arthur J. Gallagher & Co. v. Babcock*, 703 F.3d 284, 291 n.18 (5th Cir. 2012) (citation omitted). As the Fifth Circuit put it earlier this year,

> From the standpoint of equity, as most federal courts recognize, a change of legal position can be just as abusive of court processes and an opposing party as deliberate factual flip-flopping. Wright & Miller urges "thoughtful inquiry" because contrary legal positions may be defensible, for instance, when driven by an intervening change in governing law or by underlying differences in the applicable bodies of law. Wright & Miller § 4477 n.82 and accompanying text, at 598-99. . . . [T]here is no compelling reason to conclude that judicial estoppel is never allowed to sanction a party's unfair change of legal positions . . . .

*Republic of Ecuador v. Connor*, 708 F.3d 651, 657 (5th Cir. 2013). Here, it cannot be said that Mississippi's courts have changed their interpretation of § 41-29-142(1) between 2002 and the present.

At the same time, though, it is true that the Magistrate and District Judges who resolved

---

[14] *See also* 18 Moore's §§ 134.30 (discussing Fourth Circuit case law providing that "[j]udicial estoppel does not require that the issue have been actually litigated in the prior proceeding"), 134.33[4] (discussing Third Circuit case law holding that "judicial estoppel can apply even if the party was not successful in the prior proceeding if the court finds that its integrity was undermined by the party engaging in 'fast and loose' behavior"). "Thus, there may be instances in which the application of the doctrine would be appropriate even if a party's prior inconsistent statement had not been successful." *Id.* § 134.33[4].

Wansley's habeas petition a decade ago ultimately did not rely upon the State's argument that § 41-29-142(1) was discretionary and had not been applied. They accepted the State's first argument that § 41-29-142(1) did not violate the Establishment Clause. That means the Court did not reach the discretionary nature of the enhancement or whether Wansley's sentence was enhanced. Because controlling law indicates that judicial estoppel cannot apply unless the prior court accepted the party's earlier representation, estoppel is unavailing here. *E.g.*, *Babcock*, 703 F.3d at 291 n.18 (finding judicial estoppel "not appropriate" where the prior court did not adopt the party's prior argument).

The Court is therefore called upon to determine which of the State's arguments – past or present – is consistent with the law of Mississippi. Respondents now say that their 2002 argument was "inartfully drafted" and "an incorrect statement of the law in light of the record." Docket No. 54, at 12. But they cite to no statutory text or case law supporting their theory that the statute operates as an automatic sentencing enhancement. While their 2002 interpretation was consistent with the plain language of the statute and a number of decisions by Mississippi's courts, cited above, their present interpretation is supported by nothing more than their assertions. This weighs in favor of adopting the State's 2002 interpretation.

Each of the State's arguments will now be addressed.

### 2.     The title of the statute

One argument raised by respondents at the hearing was that the title of § 41-29-142 means all persons convicted under it necessarily receive enhanced penalties. *See also* Docket No. 54, at 14.

"Where the body of the statute is free from ambiguity, the meaning expressed therein must be given effect without resort to the title. The title cannot add to or extend the operation of the act." *Giles v. Friendly Fin. Co. of Biloxi*, 185 So. 2d 659, 662 (Miss. 1966) (citations omitted). In other words, "[t]he title cannot control the plain words of the statute." Sutherland on Statutory Construction § 47:3.

"If there is any uncertainty in the body of an act, the title may be resorted to for the purpose of ascertaining legislative intent and of relieving the ambiguity." *Bellew v. Dedeaux*, 126 So. 2d 249, 251 (Miss. 1961) (citation omitted). The title, however, "may not be used as a means of creating an ambiguity when the body of the act itself is clear." Sutherland on Statutory Construction § 47:3; *see also id.* § 18:7 ("Relation of title to body of an act").

The problem with respondents' contention is that the text of § 41-29-142(1) is not ambiguous. It unequivocally states that persons who sell drugs within 1,500 feet of a church *must* be penalized in accordance with § 41-29-139(b), and then, "in the discretion of the court, *may* be punished" up to twice that authorized by § 41-29-139(b). Miss. Code § 41-29-142(1) (emphasis added). Conviction under § 41-29-142 does not mean that one's punishment has been enhanced; it simply opens the door to such an enhancement. *See* Scalia & Garner at 112 ("Mandatory words impose a duty; permissive words grant discretion."). Because the text is clear, there is no need to examine the title.

### 3.    *Apprendi*

Another of respondents' arguments at the hearing was that once the jury convicted Wansley under § 41-29-142(1), the trial judge lacked discretion *not* to enhance Wansley's sentence. *See also* Docket No. 54, at 14-15 (citing *Apprendi v. New Jersey*, 530 U.S. 466 (2000)). This is another way of saying that an enhanced sentence was mandatory.

*Apprendi* holds that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. It does not hold that a jury verdict impairs a judge's discretion to withhold a sentencing enhancement, where such discretion is vested by state statute. In fact, the Supreme Court expressly confirmed the validity of a sentencing judge's exercise of discretion. *See id.* at 481 ("nothing in this history suggests that it is impermissible for judges to exercise discretion"), 497 ("once a jury has found the defendant guilty of all the elements of an offense which carries as its maximum penalty the sentence of death, it may be left to the judge to decide whether that maximum penalty, rather than a lesser one, ought to be imposed.") (quotation marks and citation omitted).

In our case, the jury did its duty by determining that Wansley's sale of cocaine occurred within 1,500 feet of a church. That is a predicate fact that had to be found by the jury, *if* the judge desired to enhance Wansley's sentence beyond 30 years. *See, e.g.*, *Brown*, 995 So. 2d at 703 ("The existence of a church within 1,500 feet of Brown's crime, therefore, is a fact that he was entitled to have determined by a jury.") (discussing *Apprendi*); *Perkins*, 37 So. 3d at 664 n.7 (Roberts, J., specially concurring) (quoting *Apprendi*). But the statute did not force the judge to enhance Wansley's sentence upon the return of a guilty verdict under § 41-29-142(1). It left the enhancement

"in the discretion of the court." Miss. Code § 41-29-142(1); *see Brown*, 995 So. 2d at 705 ("our trial judges have had every right to rely on the language of the statute itself, which provides that the sentence *may* be doubled or trebled, '*in the discretion of the court*'") (Carlson, J., specially concurring) (emphasis added). If true, respondents' argument would substitute the jury for the judge at the sentencing stage, contrary to law.

### 4.    Wansley's sentence

We finally reach the key issue: was Wansley's sentence enhanced? The answer is "no."

In this context, enhance means to increase or lengthen. Because Wansley's sentence was not increased beyond 30 years, the maximum sentence authorized under the law criminalizing the sale of cocaine, § 41-29-139(b), it cannot fairly be said that his sentence was "enhanced." The trial judge simply did not use the discretion vested in him by § 41-29-142(1) to increase Wansley's sentence beyond 30 years.[15]

Contrary to respondents' arguments in this case, Mississippi law shows that the length of a sentence does, in fact, matter to whether an inmate's sentence is deemed to be "enhanced." In *Davis* and *Taylor*, each defendant's 60-year sentence meant that a sentence enhancement had been applied. In *Pearson*, though, the defendant's 15-year sentence meant that no sentence enhancement had been applied. As that latter court stated, "in this particular case [§ 41-29-142] has no effect on his sentence because the trial judge did not use park proximity to increase Pearson's penalty **beyond** the statutory maximum." *Pearson*, 64 So. 3d at 577 (emphasis added). Wansley's case is similar. Because he was not sentenced beyond 30 years, § 41-29-142(1) "has no effect." *Id.* Wansley should be treated as all other inmates with non-enhanced sentences.[16]

---

[15]    The trial court imposed its sentence after *Davis*, *Taylor*, and *White* were released. *See* Part III, *supra*. It therefore had case law confirming that sentence enhancements under § 41-29-142(1) are discretionary, and knew it could have enhanced Wansley's sentence beyond 30 years upon proper findings. We presume that trial courts "know the applicable law and apply it correctly." *United States v. Gonzalez*, 250 F.3d 923, 930 (5th Cir. 2001) (quotation marks and citation omitted); *see Bougon v. State*, 405 So. 2d 101, 107 (Miss. 1981) ("Not only should we presume that trial judges have knowledge of the law, but in the present case the record of language used by the trial judge demonstrates beyond any doubt that he not only knew the applicable law he meticulously applied it.") (Broom, J., dissenting); *Middleton v. State*, 49 So. 3d 161, 166 (Miss. Ct. App. 2010) ("Because sentencing is a matter within the discretion of the trial court, judges are presumed to know the applicable law.") (King, C.J., concurring).

[16]    *See Middleton*, 49 So. 3d at 166 ("I believe that where the trial court does not sentence the defendant consistent with the applicable habitual-offender statute . . . and proceeds to simply sentence the defendant, the resulting sentence is not a mandatory habitual sentence. Thus, it must be treated like any other sentence, which would make the defendant eligible for the appropriate early-release programs.") (King, C.J., concurring) (citation

In the face of these facts and ample Mississippi law on this statute, however, respondents persist to contend that an oral declaration by the trial judge at the beginning of the sentencing hearing itself constituted a sentencing enhancement.[17] The argument is not borne out by the facts, since the trial judge did not extend Wansley's sentence beyond 30 years. In addition, when the trial judge's remarks are read in context, they indicate only that he recognized his authority to sentence Wansley to 60 years in prison. Had the trial judge wished to give Wansley an enhanced sentence, he could have sentenced him to a term of years beyond 30, but, in a proper exercise of his discretion, he chose not to.

Nor is this argument borne out by the law. Mississippi's "supreme court has held that where there is a direct conflict between the oral and written pronouncements of a sentence, the written order controls." *Chandler v. State*, 27 So. 3d 1199, 1201 (Miss. Ct. App. 2010) (citation omitted) (finding that "remarks made by the circuit judge during [defendant's] sentencing hearing were merely 'surplusage'"). Here, nothing in the judgment of conviction indicates an enhanced sentence. Docket No. 27-1, at 17-18 (Judgment).[18] And as discussed earlier, as well as recognized by respondents in 2002, mere conviction under § 41-29-142(1) is not coterminous with an enhanced penalty.

### 5.    Section conclusion

Respondents' various arguments on § 41-29-142(1) appear to stem from their belief that all persons convicted under that statute are "enhanced offenders," even when those defendants did not receive longer sentences. But the statute governing parole eligibility denies eligibility to those inmates who received "enhanced *penalties*," not those convicted of crimes that merely authorize discretionary sentencing enhancements. Miss. Code § 47-7-3(1)(h) (emphasis added). As a result, the Court has focused on the nature of Wansley's sentence, not the nature of his crime. Because his sentence was not enhanced, he is eligible for a vote on parole.

---

omitted).

[17] Again, this is the exact opposite of what the State said in its 2002 pleading to this Court, once more showing why judicial estoppel should apply.

[18] In fact, at the hearing, both of respondents' witnesses testified that the trial judge did not apply the enhancement provisions afforded by § 41-29-142(1).

### B.    Arguments Concerning the Propriety of Habeas Relief

Respondents' remaining contentions argue that even if they are incorrect on the merits, Wansley is still not entitled to habeas relief. Each will be taken in turn.

### 1.    The Constitutional Issues

Respondents claim there is no federal constitutional right to parole and that the Mississippi Parole Board has absolute discretion to parole inmates. Docket No. 54, at 7-9. They are correct. *See Moore*, 556 So. 2d at 1061 ("parole [is] a matter of sound discretion, not of right, and . . . the Parole Board ha[s] broad discretionary authority regarding grants of parole."); *Irving v. Thigpen*, 732 F.2d 1215, 1217-18 (5th Cir. 1984) ("the Mississippi [parole] statute does not create any constitutionally protected liberty interest in parole to which procedural due process considerations attach."). This Court cannot and will not parole Wansley. Any portion of his petition which seeks actual parole fails to state a claim.

Wansley's petition, though, also concerns whether MDOC correctly determined that he was ineligible for a vote on parole. He argues as follows:

> Petitioner, however, . . . has advanced a narrower argument, namely, he at least had the right to a parole hearing and to be eligible for parole. Moreover, the Department of Corrections was without authority to apply the conditions of an enhanced sentence or deny parole eligibility if the trial court – the authorized sentencer under state law – exercised its discretion by not applying the enhancement provisions. The arbitrary decision of the Department of Corrections to apply an enhancement that was never imposed by the trial judge violated Petitioner's federal constitutional rights. . . .
>
> [T]he Department of Corrections arbitrarily substituted its own view that an enhancement (and hence parole ineligibility) necessarily follows if an offender is convicted of selling cocaine within 1,500 feet of a church. Such a determination is at odds with the sentencing procedures established under state law.

Docket No. 52, at 11, 13.

That argument identifies the distinction between an administrative process determining whether an inmate is parole-eligible, which is a ministerial duty MDOC owes to all inmates, and the actual grant of parole, which is discretionary and in the hands of the Mississippi Parole Board. The former is a cognizable theory of relief. *See Ducksworth v. State*, 103 So. 3d 762, 764 (Miss. Ct. App. 2012) ("This court has recognized parole-eligibility claims as original actions that can be brought

in circuit court."); *Lattimore v. Sparkman*, 858 So. 2d 936, 938 (Miss. Ct. App. 2003) (finding petitioner's argument "that the statute concerning parole eligibility has been incorrectly interpreted" by MDOC cognizable on post-conviction relief, as it affected the petitioner's ability to receive a vote on parole).

Here, the Mississippi Supreme Court did not construe Wansley's motion as one seeking parole, but instead as one in which Wansley asked to be "deem[ed] *eligible* for parole." Docket No. 8-5 (emphasis added). That confirms that the issue before this Court concerns parole-eligibility. *See Ducksworth*, 103 So. 3d at 765 ("a parole-eligibility claim is based on the MDOC's actions *after* the entry of the judgment of conviction"). Because the question is one of MDOC's mandatory obligations, not the Parole Board's discretion, it can be heard here.[19]

The federal constitutional issues at play are also relatively straightforward. First, Wansley has a liberty interest in having MDOC compute his sentence in accordance with the sentencing authority's exercise of discretion. In *Hicks v. Oklahoma*, for example, the Supreme Court held that a state inmate "has a substantial and legitimate expectation that he will be deprived of his liberty only to the extent determined by the jury in the exercise of its statutory discretion," which is a "liberty interest . . . that the Fourteenth Amendment preserves against arbitrary deprivation by the State." 447 U.S. 343, 346 (1980); *see also Browne v. Estelle*, 712 F.2d 1003, 1005 (5th Cir. 1983) ("In the instant case, Browne claims that by improperly assigning him a mandatory prison term under an inapplicable statute, the state improperly deprived him of his liberty interest in a proper exercise of the sentencing authority's discretion. Although this claim primarily implicates questions of state law, under *Hicks* and its progeny, the claim is one cognizable in federal habeas corpus.") (collecting cases), *on reh'g*, 721 F.2d 1037 (5th Cir. 1984).[20]

---

[19] Case law reveals that MDOC has occasionally made legal errors warranting correction. *E.g.*, *Taylor v. Mississippi State Prob. & Parole Bd.*, 365 So. 2d 621, 622 (Miss. 1978) ("Under the present factual situation, we hold administrative correction of a prior misinterpretation of parole laws as applied to the appellant did not violate the ex post facto clause of the United States or Mississippi Constitutions."); *Snow v. Johnson*, 913 So. 2d 334, 337 (Miss. Ct. App. 2005) ("MDOC has instituted an administrative correction of their prior misinterpretation of the law."). Administrative corrections are necessary when MDOC's "policies conflict[] with statutory law." *Snow*, 913 So. 2d at 338.

[20] Wansley may also have a due process interest in not being subjected to additional incarceration by the issuance of a confidential legal memorandum. He is not able to examine its reasoning to see on what authority MDOC believes that all persons convicted under § 41-29-142(1) are ineligible for parole. Nor is the Court.

Second, Wansley has a constitutional right to be treated on equal terms as all other inmates who are convicted under § 41-29-142(1) and given a sentence of 30 or fewer years. That is because "[t]he equal protection clause essentially requires that all persons similarly situated be treated alike." *Britt v. Jackson Cnty., Miss.*, No. 1:11-cv-74, 2012 WL 2460534, at *7 (S.D. Miss. June 27, 2012) (quoting *Mahone v. Addicks Util. Dist. of Harris Cnty.*, 836 F.2d 921, 932 (5th Cir. 1988)). If other inmates with non-enhanced sentences were deemed eligible for parole, or actually paroled (a decision which necessarily includes their parole-eligibility), Wansley will not have been treated equally under the law.[21] *See id.* at *7 ("A plaintiff may bring an equal protection claim as a member of a group or as a 'class of one.'") (citing *Lindquist v. City of Pasadena*, 669 F.3d 225, 233 (5th Cir. 2012); *see also Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) ("Our cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.").

### 2. Exhaustion

The final issue is whether Wansley exhausted his state remedies. The Magistrate Judge found that Wansley had exhausted his state remedies. Docket No. 29. Although respondents never filed an objection disputing that or any other finding in the Report and Recommendation, exhaustion is not waivable in this proceeding. *See* 28 U.S.C. § 2254(b)(3).

The Fifth Circuit applies the following legal standard for exhaustion by a state inmate seeking federal habeas review:

---

[21] One case which piqued the Court's interest is *Chambers v. State*, 878 So. 2d 153 (Miss. Ct. App. 2004). In 2002, Travis Chambers, like Wansley, was convicted of selling cocaine within 1,500 feet of a church. *Id.* at 155. The Circuit Court of Wayne County sentenced him "to serve a term of twenty years in the Mississippi Department of Corrections." *Id.* at 155. On appeal, the Mississippi Court of Appeals noted that Chambers was also sentenced "as a prior convicted felon," *id.* at 154, which suggests that Chambers was potentially subject to two sentence-enhancing statutes: § 41-29-142(1) and a repeat offender statute.

To apply the State's argument from our case, conviction under § 41-29-142(1) means Chambers must serve his full term without ever being eligible for a vote on parole. In fact, though, it appears that Chambers has been released on parole. MDOC's website, as of this writing, does not list a Travis Chambers as being incarcerated, and the Mississippi Parole Board's website shows a Travis Chambers in Wayne County with a conviction for sale of cocaine as out on parole.

There may be presently, or may have been in the past, other instances of differential treatment among those convicted under § 41-29-142(1), but Chambers' case stands out because he has served enough time to be parole-eligible and actually receive a vote from the Parole Board, yet has not finished his period of supervision, which means his parole status is publicly available.

A federal habeas petition filed by a state prisoner shall not be granted unless the prisoner exhausts available state remedies. The exhaustion requirement is satisfied when the substance of the federal claim is fairly presented to the highest state court on direct appeal or in state post-conviction proceedings, even if the state court fails to address the federal claim. . . . A claim is fairly presented when the petitioner asserts the claim in terms so particular as to call to mind a specific right protected by the Constitution or alleges a pattern of facts that is well within the mainstream of constitutional litigation. . . . [T]he petitioner must afford the state court a fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim.

*Johnson v. Cain*, No. 11-31121, --- F.3d ---, 2013 WL 1163513, at *2 (5th Cir. Mar. 21, 2013) (quotation marks and citations omitted).

The first few pages of Wansley's petition for habeas relief recited the ways in which he sought review by MDOC and Mississippi's state courts. He described how he proceeded through steps one through three of MDOC's ARP grievance process, sought clarification from the court that sentenced him, and petitioned the Mississippi Supreme Court for relief. Docket No. 1, at 7-8. On December 30, 2009, the Mississippi Supreme Court denied relief in a one-page Order, summarizing Wansley's claim as follows: "Petitioner asks that this Court clarify whether his sentence has been improperly enhanced by the Mississippi Department of Corrections and to deem him eligible for parole." Docket No. 8-5.

While acknowledging that Wansley presented his claim to the Mississippi state courts and that he completed ARP step one, the State asserts that because no records exist of ARP steps two and three, the claim is unexhausted. Docket No. 8, at 5.

The undersigned is not persuaded. The same issue at the heart of this habeas petition was fairly presented to and denied by the Mississippi Supreme Court. That is enough for exhaustion. Moreover, Mississippi law provides that inmates seeking to challenge MDOC's interpretation of state statutes concerning parole eligibility need not proceed through the ARP process, and may instead "contest matters such as this as an original action in circuit court." *Lattimore*, 858 So. 2d at 938; *see Keys v. State*, 67 So. 3d 758, 760 (Miss. 2011) (finding, in parole-eligibility time calculation case, that "exhaustion of administrative remedies was not necessary," and overruling MDOC's calculation to render judgment in petitioner's favor). Wansley, of course, sought relief in

both the state circuit court and the Mississippi Supreme Court.[22]

In sum, because Wansley fairly presented his issue to the Mississippi Supreme Court, the Court will adopt the Magistrate Judge's Report and Recommendation on this point and find Wansley's parole-eligibility issue exhausted.

## V.    Conclusion

The Magistrate Judge's finding of exhaustion and implicit denial of Wansley's non-parole-eligibility theories of relief are hereby adopted as this Court's own conclusions. Wansley's objection regarding parole-eligibility, however, is sustained, as follows:

A comparison of Wansley's sentence with the plain language of § 41-29-142(1) and Mississippi case law shows that Wansley's sentence was not an enhanced penalty as defined by Mississippi law. That means he is eligible for a vote on parole. *See* Miss. Code § 47-7-3(1)(h). MDOC's misinterpretation of Wansley's sentence and § 41-29-142(1) has effectively made sentence enhancements under that statute mandatory, instead of discretionary, contrary to the plain language of the statute and established Mississippi case law. The result is that MDOC has denied Wansley the parole-eligible status all other inmates with non-enhanced sentences are provided, in violation of the due process and equal protection guarantees of the United States Constitution. The Mississippi Supreme Court's implicit conclusion otherwise was objectively unreasonable.

The Mississippi Department of Corrections is directed to allow Wansley to seek a vote from the Mississippi Parole Board in a timely fashion.

**SO ORDERED**, this the 30th day of April, 2013.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE

---

[22]  In addition, MDOC's lack of records on steps two and three of the ARP process is not dispositive. In a case before this Court last year, there was evidence from MDOC's former ARP Coordinator that "lately some ARP's have been lost in the Commissioner's office." *Rivers v. Caskey*, No. 4:09-cv-79, 2012 WL 4508002, at *3 (S.D. Miss. Sept. 28, 2012). MDOC also "accidentally omitted" a critical document from the record in that case, due to an "oversight." *Id.* Against this background, mere assertions of counsel are not persuasive.